UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DARLANNE TOUSSAINT,

    Petitioner,

v.                                            CASE NO. 6:14-cv-656-Orl-31TBS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____/

**ORDER**

This cause is before the Court on a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed a Response to the Petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. 8). Petitioner filed two replies (Doc. Nos. 15 & 16).

Petitioner alleges one claim for relief in the petition. For the following reasons, the petition for writ of habeas corpus is denied.

    **I.**     **PROCEDURAL HISTORY**

Petitioner was charged by information with aggravated child abuse (count one) and neglect of a child (count two) (Doc. 11-1 at 10-11). After a jury trial, Petitioner was convicted as charged (Doc. 11-2 at 22-23). The trial court sentenced Petitioner to a thirty-year term for count one and to a consecutive three-year term of imprisonment for count

two followed by a two-year term of community control (Doc. Nos. 11-2 at 34-36; 11-3 at 1-2). Petitioner appealed, and appellate counsel filed an *Anders*[1] brief and moved to withdraw from the case (Doc. 11-10 at 11-26). The Fifth District Court of Appeal ("Fifth DCA") affirmed *per curiam* on December 8, 2009. *Id.* at 28.

On March 2, 2011, Petitioner filed, through counsel, a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. *Id.* at 32-60. The trial court summarily denied the motion on July 12, 2011. *Id.* at 61-64. Petitioner appealed, and the Fifth DCA affirmed *per curiam* on October 29, 2013 (Doc. 11-12 at 19). Mandate issued on December 30, 2013. *Id.* at 20. Petitioner filed his federal habeas petition on April 19, 2014 (Doc. 1).

## II.   TIMELINESS

Pursuant to 28 U.S.C. § 2244:

(d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

    (A)  the date on which the judgment became final by the consideration of direct review or the expiration of the time for seeking such review;

    (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)  the date on which the constitutional right asserted was

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

>> initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

In the present case, the state appellate court entered its order of affirmance on December 8, 2009. Petitioner's conviction became final ninety days later, or on March 8, 2010. *See* Sup. Ct. R. 13(3) (stating the time to file a petition for writ of certiorari runs from the date of entry or judgment or denial of rehearing and not the date mandate is issued). Thus, under § 2244(d)(1)(A), Petitioner had through March 8, 2011, absent any tolling, to file a federal habeas petition.

Pursuant to § 2244(d)(2), the one-year period would be tolled during the pendency of any "properly filed" state post-conviction proceedings. Petitioner filed a Rule 3.850 motion on March 2, 2011. A total of 359 days of the one-year limitations period elapsed before Petitioner filed this motion. The limitations period was tolled from March 2, 2011, through December 30, 2013, the date the mandate issued on appeal. Petitioner had six days of the one-year period remaining, or until January 6, 2014.[2]

---

[2] The final day of the thirty-day period was Sunday, January 5, 2014. Therefore,

Moreover, Petitioner's prior federal habeas petitions, filed on December 16, 2013, and February 3, 2014, in case numbers 6:13-cv-1945-Orl-18GJK ("6:13-cv-1945") and 6:14-cv-191-Orl-37KRS ("6:14-cv-191"), respectively, did not toll the limitations period. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding "an application for federal habeas corpus review is not an application for State post-conviction or other collateral review within the meaning of 28 U.S.C. § 2254(d)(2)."); *Day v. Hall*, 528 F.3d 1315, 1318 (11th Cir. 2008). Therefore, the instant habeas petition is untimely filed.

### III.   EQUITABLE TOLLING

To overcome his untimely filing, Petitioner contends that he is entitled to equitable tolling (Doc. 16 at 6). In support of this claim, Petitioner states that case number 6:13-cv-1945 was timely filed, however, the Court dismissed it without prejudice (Doc. 16 at 6). Petitioner states that he did not receive the dismissal order until January 31, 2014, at which point his one-year limitations period had expired. *Id.*

The Supreme Court of the United States held in *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010), that a petitioner is entitled to equitable tolling only if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." (quoting *Pace*, 544 U.S. at 418).

In *Smallwood v. Sec'y, Dep't of Corr.*, 178 F. App'x 944, 945 (11th Cir. 2006), the Eleventh Circuit concluded that a habeas petitioner was not entitled to equitable tolling of

---

the period was extended to the next business day, Monday, January 6, 2014. *See* Fed. R. Civ. P. 6(a)(1).

4

the one-year limitations period during the time his first federal habeas petition was pending because the petitioner was not the victim of extraordinary circumstances that were beyond his control and unavoidable even with due diligence. The court stated that the petitioner received notice of the dismissal of the first federal habeas action, and instead of appealing the dismissal of the initial action, he chose to file a new petition. *Id.* The court reasoned that because the petitioner "did not exhaust the options available to him when his first federal habeas petition was dismissed, he did not exercise the level of diligence required to show the rare and exceptional circumstances that qualify a petitioner for equitable tolling." *Id.* (quotation omitted).

      Case number 6:13-cv-1945 was dismissed because Petitioner failed to pay the full filing fee or move to proceed *in forma pauperis* within thirty days of the commencement of the action as required pursuant to the Local Rules (6:13-cv-1945, Doc. 3). The Court also advised Petitioner that if he decided to initiate a new case, he should submit a new habeas corpus form and the Clerk of Court would assign a new case number. *Id.* However, similar to *Smallwood*, Petitioner received the notice of dismissal in case number 6:13-cv-1945-Orl-18GJK. Rather than file a motion for reconsideration in case number 6:13-cv-1945 or pursue an appeal of the dismissal, Petitioner initiated case number 6:14-cv-191-Orl-37KRS. That action was also dismissed for failure to pay the filing fee or move to proceed *in forma pauperis* (6:14-cv-191, Doc. 4). The Court noted in the dismissal order that despite having knowledge that he was required to pay the filing fee or move to proceed *in forma pauperis*, Petitioner initiated the action without doing either. *Id.*

5

Because Petitioner did not exhaust the options available to him when his prior federal habeas petitions were dismissed, such as appealing or moving for reconsideration, the Court concludes that he did not exercise the level of diligence required to show an extraordinary circumstance. Therefore, he is not entitled to equitable tolling on this basis.

Alternatively, the Court notes that even if Petitioner were entitled to equitable tolling because the Court directed him to file a habeas petition in a new case after dismissing case number 6:13-cv-1945, his claim fails. A discussion of the merits of Petitioner's claim follows.

## IV.   LEGAL STANDARDS

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court

6

decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B.   **Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

---

[3] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

V.   ANALYSIS

Petitioner alleges trial counsel was ineffective for failing to assure that he understood the June 2008 plea offer and "all pertinent matters bearing on the choice so that his decision would be knowing and voluntary" (Doc. 1 at 4). In support of his claim, Petitioner contends that counsel did not convey the plea offer in a manner in which he understood "what was being said" and "the minimum sentence he faced." *Id.* Petitioner asserts that he was "in a state of bewilderment due to his counsel's failure to explain the terminology of the legal language asserted between the [c]ourt and State prosecutor." *Id.* Furthermore, Petitioner states that counsel did not discuss the plea prior to the commencement of trial on September 24, 2008. *Id.* Additionally, Petitioner argues that he was only advised of the maximum sentence he could receive and did not know the minimum sentence he could receive. *Id.*

Petitioner raised this claim in his Rule 3.850 motion (Doc. 11-10 at 41-59). The trial court summarily denied the claim, concluding that the "plea colloquy was sufficiently clear to advise Defendant of his option to enter a plea, and a person of average intelligence would have understood the detailed discussion which took place. . . ." *Id.* at

63. Petitioner appealed, and the Fifth DCA affirmed *per curiam* (Doc. 11-12 at 19).

In *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), and *Missouri v. Frye*, 132 S. Ct. 1399 (2012), the Supreme Court of the United States held that the Sixth Amendment right to effective assistance of counsel extends to plea negotiations, and defense counsel has a duty to communicate a formal plea offer to the accused. To show prejudice, a defendant must demonstrate a reasonable probability that he would have accepted the plea offer but for counsel's actions, the plea would have been entered, and the plea would have resulted in a lesser charge or lower sentence. *Lafler*, 132 S. Ct. at 1383-85; *Frye*, 132 S. Ct. at 1408-09.

Prior to trial, the Assistant State Attorney put the plea offer of one year in prison followed by a ten-year term of probation on the record (Doc. 11-3 at 37, 39). The prosecutor noted that Plaintiff's lowest permissible sentence pursuant to his scoresheet was 7.6 years, and he faced a maximum term of thirty-five years in prison. *Id.* The prosecutor also described the evidence against Petitioner, including his three confessions to police. *Id.* at 37-39. Defense counsel stated that she relayed the plea offer to Petitioner, however, Petitioner rejected the offer. *Id.* at 39. Petitioner told the trial court that he wished to reject the offer despite the evidence against him, including his written confession. *Id.* at 40. The trial court asked Petitioner whether he wished to proceed with the case even though he faced a potential thirty-five-year sentence, and Petitioner responded affirmatively. *Id.*

The record reveals that Petitioner was advised that he faced a maximum sentence of thirty-five years and scored out to a minimum of 7.6 years in prison. Despite this

10

knowledge and Petitioner's understanding of the evidence, including his confessions, Petitioner rejected the plea offer. Petitioner's representations to the trial court are presumed true, and he has not shown that the Court should overlook his statements. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (stating "the representations of the defendant . . . [at a plea proceeding] constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

There is no indication that Petitioner did not understand the plea, its terms, or the minimum sentence in this case. Assuming counsel failed to convey the plea to Petitioner prior to September 24, 2008, he cannot demonstrate that but for counsel's actions he would have accepted the plea offer. *Lafler*, 132 S. Ct. at 1383-85; *Frye*, 132 S. Ct. at 1408-09. The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, this claim is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## VI. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner "makes a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*,

568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

The Court concludes that Petitioner has not made the requisite showing in these circumstances. Petitioner is not entitled to a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Darlanne Toussaint (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of the Court is directed to enter judgment and close the case.

**DONE AND ORDERED** in Orlando, Florida, this 5th day of March, 2016.



/GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 4/5
Darlanne Toussaint
Counsel of Record